

IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF ALABAMA
NORTHWESTERN DIVISION

| | |
|---|---|
| Bonnie S. Rickard, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | CIVIL ACTION NO. 07-G-1720-NW |
| ) | |
| MICHAEL J. ASTRUE, ) | |
| Commissioner of Social Security, ) | |
| ) | |
| Defendant. ) | |

## MEMORANDUM OPINION

The plaintiff, Bonnie S. Rickard, brings this action pursuant to the provisions of section 205(g) of the Social Security Act (the Act), 42 U.S.C. § 405(g), seeking judicial review of a final adverse decision of the Commissioner of the Social Security Administration (the Commissioner) denying her application for Social Security Benefits. Plaintiff timely pursued and exhausted her administrative remedies available before the Commissioner. Accordingly, this case is now ripe for judicial review under 205(g) of the Social Security Act (the Act), 42 U.S.C. § 405(g).

## STANDARD OF REVIEW

The sole function of this court is to determine whether the decision of the Commissioner is supported by substantial evidence and whether proper legal standards were applied. <u>Bloodsworth v. Heckler</u>, 703 F.2d 1233, 1239 (11th Cir. 1983). To that end

this court "must scrutinize the record as a whole to determine if the decision reached is reasonable and supported by substantial evidence." Bloodsworth, at 1239 (citations omitted). Substantial evidence is "such relevant evidence as a reasonable person would accept as adequate to support a conclusion." Bloodsworth, at 1239.

## DISCUSSION

The court has carefully reviewed the record and finds that the decision of the ALJ must be remanded for further development of the record as to the vocational impact of the plaintiff's mental impairment. Although the ALJ stated in his decision that he gave weight to Dr. Stanford, the plaintiff's treating psychiatrist, a review of the medical evidence of record shows that clarification of Dr. Stanford's opinions is required.

On August 4, 2004, the plaintiff was seen at the Riverbend Center for Mental Health after being referred by her primary care physician because of symptoms of anxiety and depression. She was seen by a counselor and given a GAF score of 50.[1] She was to return for a psychiatric evaluation on September 22, 2004.

The plaintiff saw Dr. Stanford, her treating psychiatrist at the Riverbend Mental Health Center, on September 22, 2004. Record 336. Dr. Stanford found the plaintiff's mood to be in the dysphoric, anxious, sad range. He observed: "There were times during the interview when she weeps thinking about events in the past which have

---

[1] A GAF of 41-50 indicates: "**Serious symptoms** (e.g., suicidal ideation, severe obsessional rituals, frequent shoplifting) **or any serious impairment in social, occupational, or school functioning** (e.g., no friends, unable to keep a job)." DSM-IV at 32 (emphasis in original).

gone awry." Record 337. Dr. Stanford noted that she showed a constriction of thought presentation and constriction of affect. He diagnosed a history of major depressive disorder, moderate, recurrent with possible psychotic features. The possible differential diagnoses included bipolar mood disorder and posttraumatic stress disorder. Record 337. Dr. Stanford estimated plaintiff's GAF to be 50 to 55.[2] Record 337. Dr. Stanford's treatment plan was for the plaintiff to restart her antidepressant. She was also prescribed thyroid hormone because her thyroid abnormality "could worsen her mental status if it was not treated immediately...." Record 338.

On February 24, 2005, the plaintiff was seen for a consultative psychological evaluation by Dr. Crowder, a Social Security Administration consultative examiner. Dr. Crowder diagnosed the plaintiff as suffering from Depressive Disorder NOS; and generalized anxiety disorder. Record 369. Dr. Crowder opined that the plaintiff had "a slight limitation in her ability to relate to others, slight constriction of interest and no restriction of daily activities based upon her mental condition alone." He opined the plaintiff had "good ability to understand, carry out and remember instructions, and fair to good ability to respond appropriately to supervisors, coworkers and work pressures in a work setting." Record 369.

---

[2] A rating of 51-60 reflects: "**Moderate symptoms** (e.g., flat affect and circumstantial speech, occasional panic attacks) **OR moderate difficulty in social, occupational, or school functioning** (e.g., few friends, conflicts with peers or co-workers.)" DSM-IV-TR at 34 (emphasis in original).

For the impact of a GAF of 50 see note 1, supra.

The plaintiff saw Dr. Scott, a psychiatrist at the Riverbend Mental Health Center, on October 13, 2005.  Dr. Scott noted the plaintiff presented with complaints of increased insomnia and agitation.  She also complained of decreased libido, energy, and concentration.  Record 471.  Dr. Scott noted: "She has had frequent thoughts of suicide [with] plan to run her car into a pole.  She strongly denies ever wanting to act on these thoughts."  Record 471.  She reported that she has crying spells and auditory hallucinations "telling her she is no good."  Record 471.  She reported a long-standing history of "sustained energy [with] little or no need for sleep" and "[m]ultiple unfinished projects [and a] feeling of mild euphoria."  Record 471.  On Axis I Dr. Scott diagnosed Bipolar I Disorder, Recurrent, Most Recent Episode Major Depressed, Severe With Psychotic Features[3], and Posttraumatic Stress Disorder.  Record 471.  On Axis IV he indicated problems related to social environment and occupational problems.  Dr. Scott assessed a GAF score of 50.

On October 28, 2005, the plaintiff underwent psychiatric evaluation at the Riverbend Mental Health Center by Dr. Stanford.  She reported feeling depressed angry and upset.  Record 464.  Dr. Stanford noted:

> She reports she has had suicidal thoughts.  She reports psychotic thoughts, however, these consist of nocturnal visitations by her deceased grandfather.  He died 1 1/2 [years] ago.  She does not see him or hear him as often as she

---

[3]   This diagnosis is indicated  by the diagnostic code 296.54 entered by Dr. Stanford.  See, the DSM-IV 319 (4th Edition).  Dr. Stanford recorded the descriptive diagnosis as Bipolar Disorder, Most Recent Episode Depressed, With Psychotic Features.  The "severe" modifier is provided by the last digit of the diagnostic code.  Id.

used to, but still does "sometimes". Most of the apparitions occur in the context of her insomnia.

Record 464. Dr. Stanford on examination found the plaintiff's mood to be in the dysthymic range and her affect was "wide ranging from tears to laughter." Record 465. Dr. Stanford gave the following diagnoses on Axis I:

- Provisional, it would be bipolar disorder with mixed symptoms.

- History of psychosis not otherwise specified verses and adjustment disorder with psychotic features.

- History of insomnia, probably secondary to the bipolar disorder.

- History of a pain disorder, physical and psychological components.

- History per Dr. Scott of posttraumatic stress disorder.

Record 466. Dr. Stanford estimated the plaintiff's GAF score at present to be 50. In the treatment and recommendations section of the report, Dr. Stanford wrote the following:

> State of disability. [The plaintiff] does not appear to meet criteria for permanent and complete disability due to psychiatric causes. She does, however, have a partial disability which is interfering with her daily functioning and for which Vocational Rehabilitation is recommended.

Record 467.

On April 25, 2006, the plaintiff returned to the Riverbend Center for Mental Health. She was seen by a nurse practitioner and reported that she took the medication that was prescribed by Dr. Stanford in October 2005, but "discontinued it after the first month due to not feeling that it helped." Record 462. The treatment note contains the following:

5

> She states that she is here today due to her mother's insistence on her coming. However, she does not feel that she needs treatment. She complains that she feels other people are "messing with me" and situations have happened and she feels someone is casting spells on her because they have some personal item of hers. When asked if she feels that this is similar to voodoo she agrees with that. It is difficult to get clear information from her due to changing the story throughout the interview.

Record 463. On mental examination her mood was irritable and her affect was angry. The nurse practitioner noted as follows:

> She does become rather loud during the interview and angry. She also changes to tearfulness during the interview. It is difficult to get a clear history of recurrent problems however, she does acknowledge some paranoid ideation regarding other people putting spells on her. She also reports a history of being able to talk with her deceased Grandfather however, feels that they have put a spell on her in which she is unable to continue doing this. She is agreeable to take medication if it is prescribed.

Record 463.

The ALJ placed great reliance upon the opinion of Dr. Stanford that the claimant did not "appear to meet the criteria for permanent and complete disability due to psychiatric causes." However, there is nothing in Dr. Stanford's report to indicate what these criteria were. He also opined the plaintiff had a partial disability that was interfering with her daily functioning. Without clarification from Dr. Stanford as to what criteria he was using to make these assessments, it was improper for the ALJ to place such great weight on his opinion. Moreover, Dr. Stanford gave the plaintiff a GAF score of 50 at that time, which indicates the presence of a serious impairment in social or occupational functioning.

"Because a hearing before an ALJ is not an adversary proceeding, the ALJ has a basic obligation to develop a full and fair record.  This obligation exists even if the claimant is represented by counsel, or has waived the right to representation."  Cowart v. Schweiker, 662 F.2d 731, 735 (11th Cir. 1981)(citations omitted).  One important aspect of the Commissioners' duty to develop a fair and complete record is her duty to recontact a claimant's treating physician.  The Commissioner's regulations provide as follows:

> (e) Recontacting medical sources.  When the evidence we receive from your treating physician or psychologist or other medical source is inadequate for us to determine whether you are disabled, we will need additional information to reach a determination or a decision.  To obtain the information, we will take the following actions.
>
>> (1) We will first recontact your treating physician or psychologist or other medical source to determine whether the additional information we need is readily available.  We will seek additional evidence or clarification from your medical source when the report from your medical source contains a conflict <u>or ambiguity that must be resolved</u>, the report does not contain all the necessary information, or does not appear to be based on medically acceptable clinical and laboratory diagnostic techniques.  We may do this by requesting copies of your medical source's records, a new report, or a more detailed report from your medical source, including your treating source, or by telephoning your medical source.  In every instance where medical evidence is obtained over the telephone, the telephone report will be sent to the source for review, signature and return.

20 C.F.R. § 404.1512(e)(emphasis added).

In the present case the ALJ should have recontacted Dr. Stanford to determine what criteria he was using when he opined the plaintiff "does not appear to meet the criteria for permanent complete disability due to psychiatric causes."  Because Dr.

Stanford also opined that the plaintiff a partial disability interfering with her daily functioning, and assessed a GAF score 50, it is entirely possible that Dr. Stanford's opinion would support, or even compel, a finding that the plaintiff was disabled because of her mental impairment under the standards governing Social Security disability claims. Therefore, the case will be remanded for proper development of the record.  On remand the Commissioner shall seek clarification from Dr. Stanford about his opinion as to the plaintiff's ability to perform work activity due to her mental impairment.  Dr. Stanford should be asked to set forth what criteria he used in opining the plaintiff did not have a permanent complete disability, and for clarification of the vocational impact of the plaintiff's GAF score of 50.

      An appropriate order remanding the action for further development of the record will be entered contemporaneously herewith.

      DONE and ORDERED 10 March 2010.

                                      UNITED STATES DISTRICT JUDGE
                                          J. FOY GUIN, JR.